O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MICHAEL JOSEPH SHELEBIAN** | **NO. CV 13-6364-MAN** |
| **Plaintiff,** | |
| **v.** | **MEMORANDUM OPINION** |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** | **AND ORDER** |
| **Defendant.** | |

On September 10, 2013, plaintiff filed a Complaint seeking review of the denial of his application for disability and disability insurance benefits ("DIB").[1]  (ECF No. 4.)  On October 2, 2013, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge.  (ECF No. 11.)  On August 11, 2014, the parties filed a Joint Stipulation, in which plaintiff seeks an order reversing the Commissioner's decision and remanding this case for further administrative proceedings; and the Commissioner requests that her decision

---

[1]  Although plaintiff indicates he also filed an application for supplemental security income benefits (Joint Stip. at 2), the Court finds no evidence of that in record.  (*See, e.g.*, A.R. 21, 133-34.)

1  be affirmed.  (ECF No. 11 at 60.)[2]  The Court has taken the parties' Joint Stipulation under
2  submission without oral argument.

3

4  **SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

5

6  On August 12, 2010, plaintiff filed his application for DIB.  (Administrative Record ("A.R.")
7  21, 133-34.)  Plaintiff, who was born on May 2, 1955 (*id.* 133),[3] claims to have been disabled
8  since February 26, 2009, due to:  cardiovascular and lumbar spine conditions; depression; high
9  blood pressure; fatigue; decreased energy; and an inability to concentrate.  (*Id.* 21.)  Plaintiff has
10  past relevant work experience as an accounting clerk.  (*Id.*)

11

12  After the Commissioner denied plaintiff's claim initially, plaintiff requested a hearing.  (A.R.
13  21.)  On February 27, 2012, plaintiff, who was represented by counsel, appeared and testified at
14  a hearing before Administrative Law Judge Sally C. Reason (the "ALJ").  (*Id.* 21, 30.)  Medical
15  Expert ("ME") Sterling Moore, MD, and Vocational Expert ("VE") June Hagen, PhD, also testified.
16  (*Id.* 21, 39-43, 59-61.)  On March 24, 2012, the ALJ denied plaintiff's claim (*id.* 21-30), and the
17  Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (*id.* 1-4).
18  That decision is now at issue in this action.

19

20  **SUMMARY OF ADMINISTRATIVE DECISION**

21

22  In her March 24, 2012, decision, the ALJ found that from February 26, 2009, the alleged
23  onset date of plaintiff's disability, through the date of the ALJ's decision, plaintiff had not engaged
24  in substantial gainful activity.  (A.R. 29.)  The ALJ determined that plaintiff has the severe

25

26  _____

27  [2] Because the parties did not number the pages of the Joint Stipulation, the Court uses the ECF-generated page numbers for ease of reference.

28  [3] On the date of the ALJ's decision, plaintiff was 56 years old.  (A.R. 21.)

2

1  impairments of coronary artery disease (status post myocardial infarction and stenting); and

2  degenerative disease of the lumbar spine, status post discectomy. (*Id.* 21-22, 29.) The ALJ found

3  that plaintiff's depression is not a severe impairment but also presented an alternative analysis,

4  which assumed that plaintiff's depression satisfied the "threshold 'severity' step." (*Id.* 22, 29.)

5  The ALJ concluded that plaintiff does not have an impairment or combination of impairments that

6  meets or medically equals the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.

7  (*Id.* 29.)

8

9      After reviewing the record, the ALJ made the following assessment of plaintiff's residual

10  functional capacity ("RFC").  Plaintiff: can "lift/carry ten pounds frequently and less than ten

11  pounds occasionally[;]"[4] can sit for six hours in an eight-hour workday; can stand and/or walk for

12  six hours in an eight-hour workday, but must be afforded the opportunity to change positions

13  (between sitting and standing/walking) every 30 minutes for one to two minutes; is precluded

14  from climbing ladders, ropes, or scaffolds; and is limited to performing other postural maneuvers

15  only occasionally.  (A.R. 29.)  In the alternative, with the additional "severe" impairment of

16  depression, plaintiff would also be restricted to interacting with co-workers, supervisors, and/or

17  the public for two hours in an eight-hour workday.  (*Id.*)  In making these findings, the ALJ

18  considered the medical evidence and opinions of record (*id.* 22-28), as well as the subjective

19  symptom testimony of plaintiff, finding him to be not credible to the extent his statements were

20  inconsistent with his RFC as assessed by the ALJ (*id.* 29).  The ALJ gave significant weight to the

21  opinion of the medical expert, Dr. Moore.  (*Id.* 25.)  She gave little weight to the opinion of

22  plaintiff's treating physician, Steven Waltrip, MD.  (*Id.*)

23

24

---

25      [4]      The ALJ did not explain why she concluded that plaintiff can lift/carry ten pounds

26  frequently but can only occasionally lift/carry less weight.  Because it is the opposite of the
    hypothetical presented to the VE, this statement appears to be a misstatement of the medical

27  expert's assessment that plaintiff could lift/carry a maximum of ten pounds and could carry *less*
    than ten pounds frequently. (*See* A.R. 41; *see also id.* 60 (presenting a hypothetical to the VE of

28  an individual "capable of lifting up to ten pounds occasionally and less on a more frequent
    basis").)

3

1    Based on the testimony of the VE, the ALJ found that plaintiff is able to perform his past

2    relevant work as an accounting clerk, both as he performed it and as generally performed, with

3    or without the additional severe impairment of depression.   (A.R. 28, 29.)   Accordingly, the ALJ

4    found that plaintiff has not been under a disability at any time through the date of the ALJ's

5    decision.   (*Id.* 29.)

6

7    **STANDARD OF REVIEW**

8

9    Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine

10   whether it is free from legal error and supported by substantial evidence in the record as a whole.

11   Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).   Substantial evidence is "'such relevant evidence

12   as a reasonable mind might accept as adequate to support a conclusion.'"   *Id.* (citation omitted).

13   The "evidence must be more than a mere scintilla but not necessarily a preponderance."   Connett

14   v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).   "While inferences from the record can constitute

15   substantial evidence, only those 'reasonably drawn from the record' will suffice."   Widmark v.

16   Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

17

18   Although this Court cannot substitute its discretion for that of the Commissioner, the Court

19   nonetheless must review the record as a whole, "weighing both the evidence that supports and

20   the evidence that detracts from the [Commissioner's] conclusion."   Desrosiers v. Sec'y of Health

21   and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995

22   (9th Cir. 1985).   "The ALJ is responsible for determining credibility, resolving conflicts in medical

23   testimony, and for resolving ambiguities."   Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.

24   1995).

25

26   The Court will uphold the Commissioner's decision when the evidence is susceptible to

27   more than one rational interpretation.   Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

28   However, the Court may review only the reasons stated by the ALJ in his decision "and may not

4

1    affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett,

2    340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless

3    error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential

4    to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th

5    Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400

6    F.3d at 679.

7

8                                    **DISCUSSION**

9

10           Plaintiff alleges four sources of error.  First, plaintiff claims the ALJ erred in evaluating his

11   credibility.  (Joint Stip. at 3.)  Second, plaintiff claims the ALJ erred in rejecting the opinions of

12   plaintiff's treating physician, Dr. Waltrip.  (Id.)  Third, he claims the ALJ erred in determining that

13   plaintiff's depression was not a severe impairment.  (Id.)  Fourth, plaintiff claims the ALJ failed to

14   properly consider the combined effects of plaintiff's impairments in determining the RFC.  (Id.)

15

16   **I.    The ALJ Provided Specific And Legitimate Reasons For Finding Plaintiff's**

17   **Testimony Regarding His Subjective Symptoms And Pain To Be Not Credible.**

18

19           Once a disability claimant produces objective medical evidence of an underlying impairment

20   that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective

21   testimony as to the severity of the claimant's symptoms must be considered.  Moisa v. Barnhart,

22   367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); see also

23   20 C.F.R. § 404.1529(a) (explaining how pain and other symptoms are evaluated).  "[U]nless an

24   ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find

25   an applicant not credible by making specific findings as to credibility and stating clear and

26   convincing reasons for each." Robbins, 466 F.3d at 883.  The factors to be considered in weighing

27   a claimant's credibility include:  (1) the claimant's reputation for truthfulness; (2) inconsistencies

28   either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the

                                          5

1     claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and

2     third parties concerning the nature, severity, and effect of the symptoms of which the claimant

3     complains. *See* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. §

4     404.1529(c).   An ALJ also may properly consider "[t]he nature, location, onset, duration,

5     frequency, radiation, and intensity" of any pain or other symptoms; "[p]recipitating and

6     aggravating factors"; "[t]ype, dosage, effectiveness, and adverse side-effects of any medication";

7     "[t]reatment, other than medication"; "[f]unctional restrictions"; "unexplained, or inadequately

8     explained, failure to seek treatment or follow a prescribed course of treatment"; and "ordinary

9     techniques of credibility evaluation," in assessing the credibility of the allegedly disabling

10     subjective symptoms.   Bunnell, 947 F.2d at 346-47; *see also* Soc. Sec. Ruling 96-7p; 20 C.F.R.

11     404.1529 (2005); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ

12     may properly rely on plaintiff's daily activities and on any conflict between plaintiff's testimony

13     regarding his  subjective complaints and the objective medical evidence in the record); Tidwell v.

14     Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may properly rely on weak objective support, lack

15     of treatment, daily activities inconsistent with total disability, and helpful medication); Johnson,

16     60 F.3d at 1432 (ALJ may properly rely on the fact that only conservative treatment had been

17     prescribed); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on

18     claimant's daily activities and the lack of adverse side effects from prescribed medication);

19     Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (ALJ properly found that the claimant's

20     "tendency to exaggerate" was a factor supporting his determination that she was not credible).

21     The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the

22     adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily

23     discredit a claimant's testimony regarding pain."   Bunnell, 947 F.2d at 345-46 (internal quotation

24     marks and citation omitted).

25

26         Here, the ALJ concluded that, although plaintiff "has established medical impairments that

27     can reasonably cause his basic symptoms, the cumulative evidence, including factors other than

28     objective findings alone, shows that the persistence, intensity and effects of the symptoms" allows

1    plaintiff to work at the assessed RFC level.  (A.R. 22.)  The ALJ further determined that plaintiff's

2    subjective complaints of "pain, fatigue, emotional problems and other symptoms" "are credible

3    only to the extent they are consistent with [the RFC] [f]inding." (*Id.* 22, 29.)  Significantly, the ALJ

4    cited no evidence of malingering by plaintiff, and thus, the ALJ's reasons for finding that plaintiff

5    was not credible with respect to his subjective symptom and pain testimony must be "clear and

6    convincing."

7

8        Plaintiff described suffering:  constant pain in his back, with throbbing; and stiffness and

9    severe stabbing pain when his back "goes out." (A.R. 173, 263-65.)  He stated that the pain is

10    caused by physical exercise and by prolonged sitting, standing, lifting, bending, and driving. (*Id.*)

11    He also has shooting pain in his left leg, and his back "goes out" completely every month or two,

12    with such episodes lasting between days and weeks.  (*Id.* 263-65.)  He claims that he has

13    limitations in doing housework and that, due to pain, it takes him two days to clean the bathroom

14    and three days to vacuum. (*Id.* 265.)  His daily activities include "easy" walking for brief periods,

15    lying down, driving short distances, and performing household chores over several days. (*Id.*)

16    Due to his pain, plaintiff asserts that he can no longer perform heavy exercise, lift, sit for more

17    than 15 minutes, or fully clean his home. (*Id.*)  He needs help carrying grocery bags upstairs and

18    can sit or stand for only 15 minutes at a time. (*Id.*)  Physical therapy and acupuncture have not

19    been effective in providing more than temporary relief for his symptoms. (*Id.* 56, 174.)  However,

20    light physical activity, including walking, stretching, and lying on the floor, along with the use of

21    heat and ice, help with his pain. (*Id.* 56, 265.)  Oxycontin also helps with the pain. (*Id.* 56.)

22    Plaintiff alleges that he had serious memory problems after his June 2008 heart attack, and he

23    still has some deficits in short-term memory. (*Id.* 45, 51-52.)  His depression since his heart

24    attack is "paralyzing," there are days he cannot get out of bed, and he stays home the majority

25    of the time. (*Id.* 45-47, 58.)  Plaintiff also links his complaints of fatigue to his depression. (*Id.*

26    52-53.)

27

28        The ALJ rejected plaintiff's testimony regarding the severity of his subjective complaints

for the following reasons:  (1) plaintiff was laid off from work due to downsizing, not because of his medical issues, and any assertion that he would have been spared this layoff, but for his problems related to his heart attack, is speculation; (2) prior to the layoff, plaintiff was still engaging in substantial gainful activity despite his cardiac, back, and mental health problems; (3) plaintiff's back problem is essentially unchanged from his working days; (4) after the layoff, plaintiff looked for work and collected unemployment benefits, holding himself out as willing and ready to work; (5) plaintiff has been under regular psychiatric care since his 30s and was a productive worker during that period, and other than some magnified depression after his heart attack, the cumulative data suggests no long-term change in plaintiff's mental status; (6) plaintiff is far more active than his testimony suggests; (7) many of plaintiff's comments indicate a lack of motivation and/or reasons other than his medical conditions for his continued lack of employment; (8) plaintiff generally denies adverse side effects from any of his medications; (9) plaintiff acknowledges benefit from stretching, exercising, and Pilates; (10) physical therapy notes reflect positive results from treatment; and (11) even if plaintiff is more limited by his back problems than it appeared to the ALJ, plaintiff "worked competitively at a job that allowed for that level of restriction" and "still has at least that capacity." (*Id.* 22-28.)

Plaintiff contends that the ALJ erred in her assessment of plaintiff's credibility when she used such impermissible factors as his receipt of unemployment benefits, generic statements taken out of context regarding his non-exertional impairments, and his daily activities. (Joint Stip. at 3.)  Plaintiff takes issue with the ALJ's finding that, because plaintiff collected unemployment benefits, he was holding himself out as willing and ready for work.  The record shows that plaintiff collected unemployment benefits from the first quarter of 2010, through the second quarter of 2011.  Continued receipt of unemployment benefits casts doubt on a claim of disability, as it shows an applicant holds himself out as capable of working.  Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014) (citing Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988)).  As noted by plaintiff, however, the record does not reflect whether plaintiff held himself out as available for

full-time or part-time work.[5]  (Joint Stip. at 4 (citing Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155 (9th Cir. 2008) (only availability for full-time work is inconsistent with disability allegations).)

Ninth Circuit case law on this issue is not entirely consistent.  In Webb v. Barnhart, 433 F.3d 683 (9th Cir. 2005), the Ninth Circuit rejected as a basis for finding a claimant not credible the claimant's having held himself out as being able to work during the period of alleged disability. Id. at 687-88.  Other Ninth Circuit decisions have upheld adverse credibility determinations based, at least in part, on a claimant's having held himself out as being able to work during the period of alleged disability.  See, e.g., Bray v. Comm'r, 554 F.3d 1219, 1227 (9th Cir. 2009) (among the specific findings supporting ALJ's adverse credibility determination was the fact that the claimant had sought employment); Copeland, 861 F.2d at 542 (upholding ALJ's adverse credibility determination where the ALJ relied, in part, on the fact that the claimant "received unemployment insurance benefits . . . apparently considering himself capable of work and holding himself out as available for work").  Most recently, in Ghanim, the Ninth Circuit merely stated that "continued receipt" of unemployment benefits casts doubt on a claim of disability but also stated that the receipt of some unemployment benefits, followed by the subsequent refusal of unemployment benefits, actually supports a claim of disability.  Ghanim, 763 F.3d at 1165.  Here, plaintiff contends that his impairments make him unable to perform any work; thus, while this may not be a factor that would tend to prove or disprove plaintiff's disability allegations in all cases, the Court finds that, under these circumstances, it was a relevant factor, supported by substantial evidence, which the ALJ properly considered in determining plaintiff's credibility.

Even assuming that the ALJ improperly cited plaintiff's receipt of unemployment benefits

---

[5]  In California, an individual can receive unemployment benefits if he or she is available for part-time work.  Cal. Unemp. Ins. Code § 1253.8.  When asked what kind of jobs he had applied for, plaintiff testified that he did apply for some work that was "[b]asically what I was doing . . . bookkeeping, accounts payable."  (A.R. 47.)  He did not indicate if he had applied for part-time or full-time work.

1   as a clear and convincing reason for discounting his credibility, such error is harmless, because

2   the ALJ provided other clear and convincing reasons for rejecting plaintiff's testimony. Carmickle,

3   533 F.3d at 1162 (an erroneous basis for an ALJ's credibility determination is harmless error if

4   other valid reasons support that determination).

5

6   For instance, the ALJ noted that plaintiff stopped working because he was laid off, and not

7   because of his medical conditions. (A.R. 22-23.) At the hearing, plaintiff testified that he stopped

8   working in 2009, after he was "laid off" because the company "wanted to cut the workforce." (Id.

9   44, 45.) Although plaintiff speculates that his health was the underlying reason he was one of

10   three employees laid off when his employer downsized at the start of the recession (see id. 45),

11   his speculation does not render the ALJ's credibility determination improper. The Ninth Circuit has

12   repeatedly held that an ALJ is entitled to discount a claimant's credibility, at least in part, on the

13   ground that the claimant stopped working for reasons other than his alleged impairments. See

14   e.g., Tomasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ properly discounted claimant's

15   credibility based, in part, on the fact that the claimant's reason for stopping work was not his

16   alleged disability); Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (upholding ALJ's

17   credibility determination that took into account plaintiff's statement that he left his job because

18   he was laid off, not because he was injured).

19

20   The ALJ also found that, although plaintiff's back is problematic, his condition "is essentially

21   unchanged from his working days," and noted that plaintiff worked for many years despite his

22   back problems. (A.R. 24.) A review of the record confirms the dearth of evidence that plaintiff's

23   back condition was appreciably worse around the time he stopped working. As acknowledged by

24   plaintiff, a November 2009 MRI -- taken after plaintiff's alleged onset date -- was "consistent with

25   the prior exams." (Joint Stip. at 14 (citing A.R. 219-20).) Comparing plaintiff's January 2008 MRI

26   (when he was still working) with his November 2009 MRI, there does not appear to be an

27   appreciable change, although the bulging at L3-L4 may actually have decreased from 7 mm to

28   between 4-5 mm in that time period. (Compare A.R. 218 with id. 220.) Thus, the ALJ provided

1    a clear and convincing reason for discrediting plaintiff's back complaints. Gregory v. Bowen, 844

2    F.2d 664, 667 (9th Cir. 1988) ("Substantial evidence indicated that the condition of [the

3    claimant's] back had remained constant for a number of years and that her back problems had

4    not prevented her from working over that time.").

5

6          The ALJ also noted that a number of plaintiff's comments to his therapist seemed to reflect

7    a "lack of motivation and/or other than medical reasons for his lack of employment." (A.R. 24.)

8    For instance, in April and May 2009, plaintiff told his therapist that he was losing confidence about

9    being hired due to his age and the economy (id. 712) and that he was bored but "'for the time

10   being' doesn't want to go back to work" (id. 713); he also noted that he was "feeling 'good, better'

11   despite getting laid off work, [increased] free time, [increased] exercise, ok with the uncertainty"

12   (id. 919).  In October 2009, he stated that he was "not motivated to look for employment" (id.

13   722); in December 2009, he stated that, although he "knows he is 'normal physically speaking,'"

14   "[I] still freak out at the prospect that I have got to go back to work" (id. 728).   In June 2010, he

15   stated that he "wishes he could work if possible." (Id. 1023.)  In July 2010, he stated that he is

16   "very depressed about job prospects and his inability to focus, concentrate, follow through,

17   complete tasks, handle the [illegible] of a job.  Unemployment benefits and health insurance are

18   '0 at end of year and will then transition'" (id. 1030).  The foregoing comments by plaintiff, which

19   are supported by substantial evidence of record, provide a clear and convincing reason for

20   discrediting plaintiff's complaints.  See Osenbrock v. Apfel, 240 F.3d 1157, 1166 (9th Cir. 2001)

21   (an ALJ may discredit a plaintiff's testimony based on the plaintiff's self-limited activities and lack

22   of motivation); see also Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ properly

23   considered claimant's lack of motivation to work given his financial reserves); Sample v.

24   Schweiker, 694 F.2d 639, 642 (9th Cir. 1982) (ALJ is entitled to "draw inferences logically flowing

25   from the evidence").

26

27          Another reason given by the ALJ for discounting plaintiff's subjective symptom testimony

28   is that plaintiff is far more active than his testimony at the hearing before the ALJ suggests.  (A.R.

1   24.) At the hearing, plaintiff testified that his depression was so severe that "[t]he majority of the

2   time now" he does not leave his house. (*Id.* 58.)  He testified that vacuuming for more than five

3   minutes could lead to back spasms. (*id.* 55-56.)  He also testified that his back would "seize up,"

4   typically for two or three weeks, and he would have to lie down on hard surfaces and sleep on the

5   floor. (*Id.*)  However, as noted by the ALJ, the record also shows that plaintiff reported going to

6   the gym up to five days a week and lifting weights in the 12 month period immediately following

7   his alleged onset date. (*See id.* 964, 1044.)  Specifically, in March 2010, plaintiff stated that he

8   does an "hr of cardio," approximately three times a week, but noted that aerobics tire him. (*Id.*

9   1026-27.)  Two months later, in May 2010, plaintiff reported that, in addition to going to physical

10  therapy, he was lifting weights at the gym and using the elliptical machine. (*Id.* 964.)  In July

11  2010, plaintiff's treating physician, Dr. Waltrip, suggested that plaintiff increase his exercise at the

12  gym. (*Id.* 241-42.)  In September 2010, plaintiff reported that he was exercising at the gym five

13  times a week with no intolerance, but he experienced vague chest discomfort/dyspnea (shortness

14  of breath) at higher workloads. (*Id.* 1044.)  Plaintiff's ability to perform an hour of cardio, lift

15  weights, and generally exercise at the gym three to five times a week, throughout 2010, provides

16  a clear and convincing reason, supported by substantial evidence of record, for discrediting

17  plaintiff's complaints of disabling physical pain.  *Cf.* <u>Valentine v. Comm'r Soc. Sec. Admin.</u>, 574

18  F.3d 685, 694 (9th Cir. 2009) (ALJ properly determined that claimant "demonstrated better

19  abilities than he acknowledged in his written statements and testimony" and that his "non-work

20  activities . . . are inconsistent with the degree of impairment he alleges").

21

22      The Court does not address the remaining reasons set forth by the ALJ for rejecting

23  plaintiff's credibility, because even if the Court were to find that these reasons were insufficient

24  to discount plaintiff's credibility, any such error would be harmless in view of the legally sufficient

25  reasons discussed above.  *See* <u>Carmickle</u>, 533 F.3d at 1162 (ALJ's error in providing legally

26  insufficient reasons for rejecting claimant's credibility was harmless when ALJ furnished other,

27  sufficient reasons).

28

## II. **The ALJ Properly Discounted The Opinions Of Plaintiff's Treating Physician, Dr. Waltrip.**

### A. **Legal Standard**

An ALJ is obligated to take into account all medical opinions of record.  20 C.F.R. § 404.1527(c).  It is the responsibility of the ALJ to resolve conflicts in medical testimony and analyze evidence.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  Generally, the hierarchy of physician opinions considered in assessing a social security claim, the opinion of a treating physician is entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician, and the weight afforded a non-examining physician's testimony depends on the degree to which he provided supporting explanations for his opinions.  Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)); *see also* 20 C.F.R. § 404.1527(c).

The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to know and observe the claimant. Magallanes, 881 F.2d at 751.  When a treating or examining physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons.  Ghanim, 763 F.3d at 1160-61; Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  When, as here, it is contradicted by another doctor, a treating or examining physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record.  Ghanim, 763 F.3d at 1161; Garrison, 759 F.3d at 1012; *see also* Ryan, 528 F.3d at 1198.

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician."  Lester, 81 F.3d at 831; *see* Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990) (finding that the nonexamining physician's

1   opinion "with nothing more" did not constitute substantial evidence).  However, "[w]here the

2   opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating

3   source is based on independent clinical findings that differ from those of the treating physician,

4   the opinion of the nontreating source may itself be substantial evidence." Andrews, 53 F.3d at

5   1041.  Independent clinical findings include "(1) diagnoses that differ from those offered by

6   another physician and that are supported by substantial evidence, or (2) findings based on

7   objective medical tests that the treating physician has not herself considered." Orn, 495 F.3d at

8   632 (internal citations omitted).

9

10          **B.    Analysis**

11

12          Plaintiff contends that the ALJ improperly dismissed the opinion of her treating physician,

13   Dr. Waltrip, and improperly relied instead on the "opinions and [less] restrictive residual functional

14   capacity assessment of the Medical Expert present at the hearing, Dr. Moore." (Joint Stip. at 31.)

15

16          Specifically, in an April 4, 2011 "to whom it may concern" letter, Dr. Waltrip opined that

17   plaintiff's functional limitations included "no more than ten minutes of sitting and standing at a

18   time," and an inability to lift and carry more than five pounds.  (A.R. 232.)  He stated that

19   plaintiff's "pain continues to worsen, and I expect that this will continue despite our efforts to

20   alleviate his pain." (*Id.*)

21

22          The ALJ rejected Dr. Waltrip's limitations, stating that:

23

24                It is not clear whether Dr. Waltrip was contemplating a permanent limitation

25          or was responding to an exacerbation.  In any event the record does not support

26          sustained limitations to the extent he promulgated.  As noted, the back condition

27          is long-standing.  It did not preclude the claimant from sustained work, was not a

28          basis for work termination (even if we accept claimant's theory that this related to

                                                       14

1  his performance), and there has been no associated subsequent acute event or

2  change.  Dr. Waltrip offers little in terms of objective data from examinations.

3

4  Moreover, as noted above, in the surrounding period, the claimant responded

5  positively to physical therapy and acknowledged much greater standing/sitting

6  capacities.  As also noted, the claimant reports regularly working out at a gym and

7  lifting weights.  We will also recall that he generally complains of pain/stiffness with

8  sustained activities and relates poor tolerance for "high exertion."

9

10  (A.R. 25.)

11

12  The ALJ gave great weight to the opinion of the testifying Medical Expert, Dr. Moore, who

13  opined that plaintiff could sit for six of eight hours and stand/walk for six of eight hours with an

14  allowance for change of position (sit to stand/walk and vice versa) for 1-2 minutes every 30

15  minutes.  (A.R. 25.)  The ALJ also found that, even if plaintiff is more limited by his lumbar spine

16  than the ALJ determined, plaintiff nevertheless competitively worked at a job that allowed for his

17  level of restriction, and he still has that capacity.  (*Id.*)

18

19  Plaintiff contends that the ALJ's statement -- that it was not clear whether Dr. Waltrip's

20  limitations were in response to a permanent limitation or an exacerbation -- flagged an ambiguity,

21  which required the ALJ to further the develop the record.  (Joint Stip. at 33-34.)  However, the

22  ALJ noted that the resolution of this question had no bearing on her decision, because the record

23  simply did not support Dr. Waltrip's limitations either way.

24

25  Plaintiff also asserts that Dr. Waltrip's opinions were supported by his examination notes

26  dated from March 18, 2009, through June 3, 2011, which continually found that plaintiff had

27  degenerative disc disease of the lumbar spine, chronic pain, fatigue, limited range of motion of

28  the lumbar spine, spasm, and positive straight leg raising.  (*Id.* at 34-35 (citing A.R. 236, 238-52,

15

501, 772, 1150).)  While Dr. Waltrip's notes do routinely reflect these things, there are, as noted by the ALJ, no diagnostic test results or other objective data that support his suggested limitations.  (A.R. 25.)  In fact, in December 2010, a few months before Dr. Waltrip's letter, plaintiff reported that he had gone to the gym to stretch, which "helped" him; and in January 2011, plaintiff told Dr. Waltrip he was doing stretches and exercises.  (*Id.* 236, 237.)

An ALJ may properly reject a treating physician's opinions where the physician's conclusions do not "mesh" with his objective data or history.  Tommasetti, 553 F.3d at 1040; Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly discounted physician's limitations as "not supported by any findings").  Further, an ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings."  Thomas, 278 F.3d at 957; *see also* 20 C.F.R. § 404.1527(c)(2); Valentine, 574 F.3d at 692-93 (contradiction between a treating physician's opinion and his treatment notes constitutes a specific and legitimate reason for rejecting the treating physician's opinion); Bayliss, 427 F.3d at 1216 (contradiction between treating physician's assessment and clinical notes justifies rejection of assessment); *see also* Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ properly rejected physician's determination where it was "conclusory and unsubstantiated by relevant medical documentation").  The opinion of Dr. Moore, a non-examining physician, cannot alone constitute substantial evidence that warrants the rejection of the opinion of either an examining or treating physician.  Lester, 81 F.3d at 831.  Nevertheless, the ALJ may reject a treating physician's opinion partly on the basis of the testimony of a non-treating, non-examining medical advisor, when, as here, doing so is consistent with other independent evidence in the record.  Morgan v. Apfel, 169 F.3d 595, 602 (9th Cir. 1999).

The record shows that plaintiff had worked with his back condition for many years, and there was no indication of any significant change in his back condition at, around, or following the alleged onset date of plaintiff's disability  As noted by the ALJ, after his alleged onset date, plaintiff regularly exercised at a gym where he was able to perform an hour of cardio and lift weights, and

he generally complained of pain and stiffness only with sustained activities and high exertion. (A.R. 25, 964, 1044.)  Indeed, on May 4, 2010, after attending five physical therapy sessions, plaintiff reported he could walk and stand for about half an hour and was more comfortable sleeping. (*Id.* 1207.)  Plaintiff further testified that, when he was working, he drove an hour each way to work, despite his back condition.  (*Id.* 46.)  Thus, the ALJ did not err in determining that Dr. Waltrip's extreme limitations were not supported by his treatment notes and were belied by plaintiff's activities, and these discrepancies were proper reasons for rejecting the opinion of plaintiff's treating physician.  *See* Tommasetti, 553 F.3d at 1040; Rollins, 261 F.3d at 856; Thomas, 278 F.3d at 957.

Further, the ALJ properly found that Dr. Moore's opinion was consistent with this evidence. Dr. Moore opined that plaintiff could lift and carry at the sedentary range: "ten pounds maximum, less than ten pounds frequently." (A.R. 41.)  He stated that plaintiff could stand, walk, and sit for six of eight hours, with the option to change positions every 30 minutes (from standing to sitting and vice versa) for one to two minutes every hour.  (*Id.*)  In commenting on Dr. Waltrip's limitation to lifting or carrying no more than five pounds, Dr. Moore stated that he believed plaintiff to be at the sedentary level for lifting/carrying, but he did not see anything in the record that would preclude plaintiff from lifting ten pounds occasionally.  (*Id.* 42.)  Because the ALJ provided a detailed and thorough summary of the facts, which established that Dr. Moore's opinion was supported by independent evidence in the record, the ALJ did not err by relying partly on Dr. Moore's opinion in rejecting the opinion of plaintiff's treating physician.  *See* Morgan, 169 F.3d at 602; Magallanes, 881 F.2d at 751.

Furthermore, to the extent that the ALJ erred by crediting Dr. Moore's opinion rather than Dr. Waltrip's, the error is harmless, because plaintiff could do his prior relevant work as actually performed.  Plaintiff testified that his former employer was "very flexible" with respect to his hours and always accommodated his back problems and that he was able to leave work early, work from home, or even work on weekends when necessary. (A.R. 44-46.)  Plaintiff also testified that, at

his former employment, he "really didn't have to lift much," except maybe a "couple of files," and he had the option not to do anything that would aggravate his back. (*Id.* 59-60.) In short, plaintiff's former job -- as he performed it -- would accommodate the level of restriction found by Dr. Waltrip as well as by Dr. Moore, rendering any error harmless. Molina, 674 F.3d at 1115 (error is harmless so long as there remains substantial evidence to support the ALJ's decision); Burch, 400 F.3d at 679 (ALJ's decision will not be reversed for errors that are harmless).

## III.   The ALJ Properly Considered Plaintiff's Mental Impairment Of Depression.

The ALJ acknowledged that, since plaintiff was in his 30s, he has had an extensive history of depression and mental health treatment. (A.R. 24.) The ALJ, noting that the record reflected that plaintiff had only mild restrictions in activities of daily living and in maintaining social functioning and concentration, persistence, or pace, found that plaintiff's depression was not a severe mental impairment. (*Id.* 21-22.)

Plaintiff contends that the ALJ improperly rejected plaintiff's depression as a severe impairment. (Joint Stip. at 46-52.) However, rather than simply rejecting the severity of plaintiff's depression, the ALJ alternatively accepted plaintiff's depression as a severe impairment and analyzed the evidence of plaintiff's depression in her discussion of plaintiff's RFC. (*Id.* 22.) As a result, the ALJ included an "alternative" limitation in the RFC to address the effect of plaintiff's depression:

> As indicated above, due to some symptoms of anger, irritability, poor self-esteem and other concerns, the ALJ makes an alternative finding that the claimant has the additional restriction that he can only interact with co-workers, supervisors and the public for 2 of 8 hours. As consistent with and/or augmenting the [Dictionary of Occupational Titles] (and as consistent with the claimant's specific jobs), [the VE] testified that work as an account clerk would still be viable. She

18

1   explained that this is essentially work that one does independently.

2

3   (*Id.* 28.)

4

5   Because the ALJ did consider plaintiff's depression and accompanying social anxiety in

6   determining plaintiff's RFC and his ability to perform his past relevant work, any legal error in the

7   ALJ's characterization of plaintiff's depression was harmless.

8

9   **IV.   The ALJ Properly Considered The Combined Effects Of Plaintiff's Impairments.**

10

11   Plaintiff contends that the ALJ failed to address "the combined effects of [plaintiff's] chronic

12   back pain, a medically documented non-exertional impairment and opined by his treating

13   physician to be increasing in severity, and depression, a medically documented non-exertional

14   impairment and opined by his treating clinical psychologist [to] be increasing in severity," when

15   determining plaintiff's RFC.  (Joint Stip. at 55.)  He specifically complains that the ALJ:  (1) failed

16   to credit Dr. Waltrip's April 4, 2011, letter, and ignored Dr. Waltrip's findings that plaintiff

17   experienced foot numbness and radiating pain in his left leg (*id.* at 56-57); and (2) improperly

18   rejected the opinion of treating psychologist Paul Oberon, PsyD, that plaintiff's depression had

19   increased over time and led to a significant impairment in plaintiff's daily activities with "depressed

20   mood everyday, feelings of hopelessness, helplessness, and worthlessness, marked difficulty in

21   maintaining concentration and focus, decreased energy, lack of motivation, social isolation and

22   difficulty maintaining social functioning, sleep difficulties, a pervasive loss of interest in almost all

23   activities, loss of getting pleasure out of any activities (a[n]hedonia), frequent tearfulness, chronic

24   suicidal ideation, and poor appetite resulting in significant weight loss" (*id.* 58 (citing A.R. 1016-

25   17)).

26

27   This claim is merely a "rehashing" of plaintiff's previous arguments regarding the ALJ's

28   rejection of Dr. Waltrip's extreme limitations, and the ALJ's alleged "failure" to find plaintiff's

19

1  depression severe at step two. (*Id.* 59.)  As explained above, the ALJ expressly considered both

2  plaintiff's back pain and his depression in assessing plaintiff's ability to perform his past relevant

3  work.  Accordingly, the Court rejects plaintiff's fourth contention for the same reasons that it

4  rejected his prior three arguments.

5

6  **CONCLUSION**

7

8  For the foregoing reasons, the Court finds that the Commissioner's decision is supported

9  by substantial evidence and is free from material legal error.  Neither reversal of the

10 Commissioner's decision nor remand is warranted.

11

12 Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the

13 Commissioner of the Social Security Administration.  IT IS FURTHER ORDERED that the Clerk of

14 the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel

15 for plaintiff and the Commissioner.

16

17 **LET JUDGMENT BE ENTERED ACCORDINGLY**.

18

19 DATED: March 5, 2015

20                                      *Margaret A. Nagle*

21                              MARGARET A. NAGLE
                               UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28

20